## 0036

EM-CO METAL PRODUCTS, INC., Appellant, v. The GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., The Haskell Co. and M & C Steel, Inc., Defendants, of whom The Great Atlantic & Pacific Tea Company, Inc., and The Haskell Co. are Respondents.

(311 S. E. (2d) 83)

Court of Appeals

*Alford, Johnson & Salane,* and *Barnes & Austin,* Columbia, *for appellant.*

*McNair, Glenn, Konduros, Corley, Singletary, Porter & Dibble,* Columbia, *for respondents.*

Jan. 3, 1984.

GOOLSBY, Judge:

The sole question for our consideration in this action to foreclose a mechanic's lien is whether there was an abuse of discretion amounting to an error of law on the part of the lower court in relieving the respondents Great Atlantic & Pacific Tea Company, Inc. (A & P), and Haskell Company from default judgments and allowing them to answer. The appellant Em-Co Metal Products, Inc., asserts that the order appealed from was without evidentiary support and was controlled by an error of law. We disagree and affirm.

Em-Co served A & P, Haskell, and M & C Steel, Inc., with a summons, complaint, and lis pendens on May 21, 1980. On August 7, 1980, Haskell served an answer, set-off, and counterclaim in response to the complaint. No pleadings were ever served by A & P.

On August 26, 1980, Em-Co returned Haskell's pleadings and at the same time moved for default judgments against A & P and Haskell. The motion was based upon A & P's complete failure to answer or otherwise plead and Haskell's allegedly untimely served and improperly verified pleadings. After a hearing, the lower court on March 9, 1981, found both A & P and Haskell in default.

The lower court conducted another hearing three days later, on March 12, 1981, upon alternative motions by the respondents for reconsideration of the court's finding that they were in default and for relief from the judgments of default. In an order dated March 20, 1981, the lower court denied the motion to reconsider; however, the court, pursuant to Section 15-27-130 of the South Carolina Code of Laws (1976), relieved each respondent from its default on the grounds of excusable neglect, mistake, and surprise.

A motion pursuant to Section 15-27-130 to be relieved of default is solely within the sound discretion of the trial court. *Ledford v. Pennsylvania Life Ins. Co.*, 267 S. C. 671, 230 S. E. (2d) 900 (1976). Judicial discretion in granting or refusing relief from a default should be exercised "in the same liberal spirit in which [Section 15-27-130] was designed — in furtherance of justice and in order that cases may be tried and disposed of upon their merits." *Gaskins v. Cal-*

*ifornia Ins. Co.*, 195 S. C. 376, 379-80, 11 S. E. (2d) 436 (1940). In an appeal from an order of the circuit court relieving a party from a default, the Court of Appeals possesses no power to substitute its own judgment for that of the circuit court. *Cf. Bishop v. Jacobs*, 108 S. C. 49, 93 S. E. 243 (1917). The decision of the lower court will not be disturbed on appeal absent a clear showing that the lower court abused its discretion in relieving a default. *Renney v. Dobbs House, Inc.*, 275 S. C. 562, 274 S. E. (2d) 290 (1981); *Stewart v. Floyd*, 274 S. C. 437, 265 S. E. (2d) 254 (1980). An abuse of discretion can arise when either an order based on factual conclusions is without evidentiary support or the judge issuing an order was controlled by an error of law. *Ledford v. Pennsylvania Life Ins. Co., supra; Rochester v. Holiday Magic, Inc.*, 253 S. C. 147, 169 S. E. (2d) 387 (1969). The burden always rests upon the appellant to show an abuse of discretion [*Baggett v. Strickland*, 158 S. C. 60, 155 S. E. 237 (1930)]; and in determining whether an abuse of discretion occurred, the case must be considered in the light of its underlying circumstances. *Rochester v. Holiday Magic, Inc., supra; Brown v. Weathers*, 251 S. C. 67, 160 S. E. (2d) 133 (1968).

In deciding there was excusable neglect on the part of both respondents, the trial court found as a fact that Em-Co's first lawyer, John M. Barton, gave Robert E. Stepp, counsel for both A & P and Haskell, an oral extension of time to respond to the complaint until a decision could be made by Em-Co concerning whether to dismiss A & P from the action. The trial court also found as a fact that Stepp relied upon his agreement with Barton and acted in a manner consistent with its terms, notwithstanding Circuit Court Rule 14, which requires any agreement between attorneys "in respect to the proceedings in a cause" to be in writing for it to be enforceable. Em-Co claims these findings are clearly erroneous and unsupported by the evidence.

In reviewing the lower court's order to determine whether its factual conclusions have evidentiary support, we need not look just at the facts set forth in the order. We may also consider other facts presented below and reflected in the record. *Cf. Rochester v. Holiday Magic, Inc., supra.* When we examine the record, we see evidentiary support for the lower court's factual findings.

We address first the finding by the lower court that Barton gave Stepp an oral extension of time to respond to the complaint until a decision was made concerning whether to dismiss A & P. According to Stepp, after the action was commenced and immediately upon receiving a copy of the complaint, he contacted Barton, a law school classmate, and requested an extension of time to answer so that he could ascertain the facts and determine what defenses might exist. On June 5, 1980, Barton granted a twenty-day extension. Stepp then contacted his clients and obtained information relative to the claims against them including the fact that a bond had been filed concerning the lien in question. On June 9, 1980, Stepp forwarded a copy of the bond to Barton and also telephoned Barton to tell him that the bond was on its way and to request that he consider dismissing the action as to A & P and naming the bonding company in its place. Not having heard from Barton regarding the dismissal of A & P, Stepp called him within the twenty-day extension period to inquire whether a determination had been made. Upon being told that the request was still under consideration, Stepp asked for and received, he testified, an extension until such time as Em-Co determined whether to dismiss A & P from the lawsuit.[1] The court's finding that an additional extension of time was given by Barton, therefore, has evidence to support it.

As to the finding by the lower court that Stepp relied upon his oral agreement with Barton and acted in a manner consistent with its terms, the record reveals that another attorney, Weldon R. Johnson, took over the representation of Em-Co and on July 15, 1980, wrote Stepp a letter in which he requested Stepp to call him concerning his "Answer and its due date [sic]." Although Johnson's letter mentioned the June 5, 1980, extension, it contained no hint that A & P and Haskell might be held in default. Several days later when Stepp returned from out of town, Stepp telephoned Johnson and told him of his agreement with Barton and inquired again about A & P. Johnson, who did not contest Stepp's understanding

---

[1] The record, it should be noted, does not show Barton denying that he granted Stepp such an extension. When asked did he admit giving Stepp an extension beyond June 5, 1980, Barton responded, "I do not because I simply do not remember, and that's something beyond my knowledge that I cannot admit to and I can't deny it. It's beyond my recollection."

regarding the second extension, promised to let Stepp know what decision had been made concerning A & P. Subsequently, Johnson informed Stepp that A & P would not be dropped from the lawsuit. Stepp confirmed in a letter dated July 24, 1980, and addressed to Johnson, Em-Co's decision not to dismiss A & P. In the letter, Stepp also outlined the history of Em-Co's dispute with A & P and Haskell and detailed the problems involved. Stepp closed the letter with a promise to "enter Answers on behalf of The Haskell Company and A & P within the next several days." On August 7, 1980, Stepp served for Haskell alone an answer, set-off, and counterclaim which he himself verified.[2] We conclude, then, that the finding that Stepp relied upon and acted consistently with another agreement with Barton to extend time enjoys evidentiary support as well.

Em-Co argues that the lower court abused its discretion because it issued an order controlled by an error of law. Specifically, Em-Co points to a recent Supreme Court decision, *Gillespie v. Rowe*, 275 S. C. 98, 267 S. E. (2d) 535 (1980). In that case, the defendant moved for leave to answer at the same time the plaintiff moved for judgment by default. Counsel for the plaintiff alleged that he granted only a twenty-day extension. Counsel for the defendant, however, maintained that he obtained an extension for a much longer period. He also claimed to have gotten a second extension from the receptionist of plantiff's counsel. The agreements were not reduced to writing in violation of Rule 14. The Supreme Court reversed the lower court's holding that excusable neglect existed because of the confusion and stated:

> Neglect is shown but no excuse for it. It is clear that the alleged extensions do not comply with Circuit Court Rule 14. No excuse is offered why the rule was not complied

[2] Stepp, we mentioned, served no answer for A & P. Sometime after serving responsive pleadings for Haskell, he opened a letter from Johnson dated August 6, 1980. The letter informed Stepp that, after receving his letter of July 24, 1980, Johnson had "checked with John Barton and he [had] no recollection of leading [Stepp] to believe there would be an [additional] extension of time." Johnson's letter went on to report that he had referred the matter to Em-Co for a determination on whether to "proceed with a default."

Stepp had intended to respond for A & P also, he testified, but concluded that there was no "point to it" because Em-Co had already determined A & P and Haskell to be in default before he served Haskell's responsive pleadings.

with and no reason whatsoever appears why counsel for defendant needed fifty-two days to answer a simple contract claim complaint. Any confusion surrounding the telephone conversation resulted because counsel for defendant chose not to comply with Circuit Court Rule 14.

275 S. C. at 99-100, 267 S. E. (2d) 535.

But *Gillespie* is not controlling. Its facts differ from those here; and as we noted previously, each case must be considered in the light of its own attendant circumstances. *Brown v. Weathers, supra; cf. Bledsoe v. Metts,* 258 S. C. 500, 189 S. E. (2d) 291 (1972). First of all, Em-Co's counsel did not deny, like the plaintiff's attorney in *Gillespie* apparently did, the existence of an additional extension of time. Secondly, in the present case, there was communication between counsel for the parties during the twenty-day extension period concerning the dismissal of one of the respondents and contact between the parties attorneys regarding defense contentions after that time and before any declaration of default. Thirdly, unlike the defendant's counsel in *Gillespie,* the respondents' attorney had a stated reason for not wanting to answer immediately; namely, Em-Co might agree to dismiss one of the respondents voluntarily. Fourthly, the lower court did not find, as the lower court did in *Gillespie,* that excusable neglect existed because of confusion; rather, it found the existence of excusable neglect because respondents' counsel relied upon an oral stipulation. Finally, the lower court in this case, unlike the one in *Gillespie,* applied Rule 14 and held unenforceably any agreement to extend time not reduced to writing, thus rejecting the contention of A & P and Haskell that their time for answering never expired because of the oral extension.

Em-Co further complains about the lower court's use of an older New York case, *Mutual Life Ins. Co. v. O'Donnell,* 146 N. Y. 275, 40 N. E. 787 (1895), to support its holding that Stepp's reliance upon an oral stipulation constituted excusable neglect sufficient to relieve A & P and Haskell from their default. We do not agree with Em-Co that the lower court's reliance upon that decision was inappropriate. The case is especially analogous to the one at hand.

In *Mutual Life Ins. Co. v. O'Donnell, supra,* the New York appellate court considered Rule 11 of the Rules of Practice for

New York, a rule virtually identical to Rule 14 of the South Carolina Circuit Court rules. The court overturned the order vacating the deficiency judgment because the stipulation relied upon by the defendant was not reduced to writing; however, the court went on to relieve the defendant of the judgment saying:

> The defendant may, however, if entitled thereto, be awarded, in a proper proceeding, appropriate relief. Such relief may doubtless be obtained by motion. He may be entitled to relief by having the original judgment as entered modified by striking out so much thereof as adjudges that he pay any deficiency that may arise upon a sale of the premises, or he may be entitled to have a resale of the premises. *While the oral stipulation under the rule is not binding, and will not be carried into effect by the court, still it will not permit a party to be misled, deceived, or defrauded by means thereof, and in some instances, where it has been acted upon by the party making it, he will not be permitted to retract and take advantage of the acts or omissions of his adversary thereby induced. [Citation omitted.] So that, if the defendant, O'Donnell, by the oral agreement, was led to believe that the plaintiff would bid the full amount of the judgment, and, relying thereon, neglected to attend the sale and look after his interests thereat, the court may, upon motion and by way of a favor to him, order a resale.* [Emphasis added.]

40 N. E. at 788.

The application of *O'Donnell* to this case is clear. Having determined that the agreement existed, although it was not binding because of Rule 14, we hold that it still affords A & P and Haskell relief. The facts overwhelmingly demonstrate their counsel's belief that he had an extension of time in which to answer. Nothing done or said by Em-Co's counsel prior to the time of Haskell's answer contradicts his belief. In fact, the actions of Em-Co's counsel seem to confirm Stepp's understanding.

The trial court, we noted before, also found that the default should be relieved upon the grounds of mistake and surprise in addition to that of excusable neglect. Em-Co challenges these findings as well; however, because we have determined

that the lower court did not abuse its discretion when it found the existence of excusable neglect, we need not address whether it also abused its discretion in finding the existence of mistake and surprise.

Finally, Em-Co contends that neither A & P nor ■ Haskell made a *prima facie* showing of a meritorious defense. *See Duncan v. Duncan,* 93 S. C. 487, 76 S. E. 1099 (1913). While the lower court found that such a showing was made, it did not set forth the facts upon which it based that conclusion; however, there is evidence in the record which supports the lower court's conclusion that the respondents demonstrated the existence of a meritorious defense.

Em-Co alleged in its complaint, among other things, that A & P employed Haskell to construct certain improvements on A & P's property in Lexington County and that they agreed to purchase a quantity of steel from Em-Co for that purpose. Em-Co alleged further that, pursuant to its agreement with A & P and Haskell, it supplied the steel which Haskell used in constructing the improvements on A & P's property.

During the second hearing conducted by the lower court, a letter dated July 24, 1980, addressed to Johnson, and authored by Stepp was introduced. We believe the letter, although it purported to set forth only Haskell's position, showed both respondents possess meritorious defenses. The letter reads in part:

As I understand the facts, The Haskell Company undertook to construct two Family Mart stores for the Great Atlantic and Pacific Tea Company. One such store was in the vicinity of Largo, Florida, with the other being this job in West Columbia. The steel requirements for these jobs were subcontracted to M & C Steel by virtue of a purchase order. As I understand from you, M & C then subcontracted with your client to manufacture the steel.

The problem arose because the Largo job and the West Columbia job were not identical. Apparently, the steel was manufactured according to the same plans and specifications. As a result, a considerable amount of the steel delivered to the West Columbia job did not conform to the plans and specifications for that job. Additionally, some of the steel appears to have been delivered late.

Two defenses are thus clearly revealed. Both non-conforming goods and late delivery would constitute meritorious defenses to the complaint herein. *Cf. Spears v. Durant,* 76 S. C. 19, 56 S. E. 652 (1907); *Tenney v. Anderson Water, Light & Power Co.,* 69 S. C. 430, 48 S. E. 457 (1904); 53 Am. Jur. (2d) *Mechanic's Liens* § 391, 908-909 (1970).

The judgment below is accordingly

Affirmed.

SHAW and CURETON, JJ., concur.